**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| DUNCAN AVIATION, INC., | CIVIL ACTION NO.: 4:24-cv-3004 |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT** |
| FLEXJET, LLC, | |
| Defendant. | |

This lawsuit is brought by Plaintiff, Duncan Aviation, Inc. ("Duncan") and asserts its claims for relief against Defendant, Flexjet, LLC ("Flexjet") which arise out of Flexjet's default and failure to make payments to Duncan as required by a series of written bailment agreements governing Flexjet's use of certain jet engines owned by Duncan.  In support of its claims, Duncan states as follows:

**THE PARTIES**

1.      Duncan is a corporation organized and existing under the laws of the State of Nebraska.   Duncan's headquarters and principal place of business is Lincoln, Lancaster County, Nebraska.

2.      Flexjet is a limited liability company organized and existing under the laws of the state of Delaware.   Flexjet's headquarters and principal place of business is in Richmond Heights, Ohio.

**JURISDICTION AND VENUE**

3.      Jurisdiction is proper in this Court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).   The parties are citizens of different states, and

none are citizens of the same state.  Further, as described in more detail below, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

5.    In addition, pursuant to a series of written Bailment Agreements (as that term is defined below), Duncan and Flexjet agreed to a Nebraska choice-of-law provision and a Nebraska forum-selection provision, and agreed to submit to the jurisdiction of courts sitting in Nebraska for purposes of enforcing and adjudicating their rights under the Bailment Agreements.

## BACKGROUND

6.    Duncan is an aircraft maintenance and repair company established in 1956.

7.    Flexjet is a fractional jet ownership company with a fleet of not less than two hundred and seventy private aircraft operating in the United States and internationally.

8.    Duncan and Flexjet have an ongoing business relationship.  On a regular and ongoing basis, Flexjet utilizes Duncan for the service and repair of various aircraft within Flexjet's fleet of private aircraft.

9.    Ancillary to its principal business of aircraft maintenance and repair, Duncan also owns certain aviation parts and equipment, including jet engines, which it at times makes available for use, lease, rental and/or bailment to certain of its customers.

10.    Duncan and Flexjet entered into a series of written equipment bailment agreements wherein Duncan generally agreed to permit Flexjet to temporarily use jet engines owned by Duncan pursuant to the specific terms set forth in each of the individual equipment bailment agreements (hereinafter, these equipment bailment agreements may be referred to individually as a "Bailment Agreement" and collectively as

the "Bailment Agreements").  Copies of the Bailment Agreements are attached as **Exhibit "A1" through "A51."**

11.    The plain language of the written Bailment Agreements described generally in Paragraph 10 above governs both parties' obligations related to Flexjet's use of each of Duncan's jet engines (collectively, the "Jet Engines") and governs Flexjet's various payment obligations related to the use of the same.  Relevant provisions include, without limitation:

A.  Terms and Conditions, Section 2.1(A), titled "Rent:"

2.    **RENT, PAYMENT, SECURITY.**
   2.1  **Rent.**
      **(A)** Customer will pay the Operating Charges, Minimum Charge, Deposit, Advance Payment, and other charges/fees (as applicable) (collectively "Rent") provided on page one of this Agreement.  Operating charges begin on the date Equipment is delivered to Customer and end on the date Duncan Aviation receives the Equipment (including the logbook and all components originally delivered with the Equipment) at its designated facility indicated in section 26 "Equipment to be returned to:" on page one of this Agreement.  Customer will advise Duncan Aviation, in writing, the number of operating hours accumulated for the Equipment in each calendar month by the 10th day of the subsequent calendar month.  Charges and fees described in this article two are in addition to any charges and fees that may be due by Customer as described elsewhere in this Agreement.
      **(B)** If Duncan Aviation provides Equipment as a rental or bailment under a maintenance plan or agreement identified in sections nine through fifteen, and
         (i)  Customer's equipment covered under the maintenance plan or agreement ceases to be covered under that maintenance plan or agreement; or
         (ii) Duncan Aviation determines after the execution of Duncan Aviation's standard bailment agreement, that repairs of Customer's equipment covered under the maintenance plan or agreement are in fact not covered by that maintenance plan or agreement,
      then, Duncan Aviation may charge Customer Duncan Aviation's standard Equipment operating charges.

B.  Terms and Conditions, Section 2.2, titled "Payment:"

2.2  **Payment.**  Customer will pay invoices within 30 days of invoice date, in U.S. currency and directed to the remittance address on the invoice.  Credit terms are subject to approval by Duncan Aviation.  Duncan Aviation may without notice modify or withdraw credit terms including, requiring advance payment, guarantees, or other security.  If Customer is delinquent in any payment to Duncan Aviation, then until all delinquent amounts and late interest, if any, are paid Duncan Aviation may, at its discretion:
   **(A)** set off any credit or sum owed by Duncan Aviation to Customer against any undisputed amount owed by Customer to Duncan Aviation;
   **(B)** declare Customer's performance in breach and terminate this Agreement;
   **(C)** repossess Equipment for which payment has not been made;
   **(D)** charge interest on delinquent amounts at a rate of 1.33% per month or the maximum rate permitted by law, if lower, for each month or part thereof;
   **(E)** recover all costs of collection including, without limitation, reasonable attorneys' fees;
   **(F)** if Customer is delinquent on a payment schedule, accelerate all remaining payments and declare the total outstanding balance then due and owing; or
   **(G)** combine any of the above rights and remedies as may be permitted by applicable law.
The above remedies are in addition to all other remedies available at law or in equity.

C.  The "Bailment Terms:"

| | | BAILMENT TERMS | | |
|---|---|---|---|---|
| 16.  Bailment Charges | 16a. Hourly Operating Charge $ (U.S.)  2349.81 | 17.  P.O. Number | |
| | 16b. Daily Charge  $ (U.S.)   n/a | 18.  Date of P.O. | |
| | 16c. Minimum Charge $ (U.S.)  $15,000.00 | 19.  Additional Information: "Published rental rates stated in Blocks 16(a-d) apply for "non-MSP covered events and/or MSP account is  in PAR" Operator Continues to Pay MSP As Normal. | |
| | 16d. Other $ (U.S.)    See block 19 | | |
| 20.  Deposit/Advanced Payment Required        (Check one) ☐Yes  ☒No     $(U.S.) 0.00 | | Hourly operating charge in block 16a payment is required the 1st of each month. | |
| 21. Test Cell Fee $ (U.S.)  15,000          (Payable if serviceability inspection is not accomplished prior to equipment removal) | | | |
| Customer acknowledges the necessity for prompt return of the Equipment and agrees to pay the late return charges in section 22 below in addition to all other applicable fees stated in this Bailment Agreement. | | | |

12.    Flexjet contends it is entitled to payment of the amounts owed to Duncan by Honeywell International, Inc., under a contract between Flexjet and Honeywell, known as a Mechanical Services Agreement ("MSA"), dated March 11, 2019.  Duncan is not a party to the MSA.

13.    According to Flexjet, in exchange for Flexjet's payment to Honeywell of certain fees under the MSA, Honeywell promised Flexjet to pay, on Flexjet's behalf, third parties, like Duncan, which performed maintenance services on Flexjet engines or provided rental Jet Engines to Flexjet.  Conversely, Honeywell has taken the position that Flexjet repairs and rental hours on Jet Engines are no longer covered under the MSA, and has discontinued payment for such services by Duncan to Flexjet. Honeywell and Flexjet are litigating that issue, among others, in a separate lawsuit in New York state court.

14.    Flexjet's and Honeywell's dispute is irrelevant to Flexjet's obligations to Duncan under the Bailment Agreements.  Honeywell is not a party to any of the Bailment Agreements, which are fully integrated contracts between Duncan and Flexjet alone:

23.  **ENTIRE AGREEMENT.** The terms contained in this Agreement constitute the entire agreement between Customer and Duncan Aviation with respect to its subject matter and supersedes any prior representations and agreements, oral or written, and all other communications between Customer and Duncan Aviation relating to its subject matter.  This Agreement will not be varied except by an instrument in writing subsequently executed by an authorized representative of each party.

4

15.     Between 2021 and the present date, Flexjet has possessed and/or utilized the Jet Engines pursuant to the Bailment Agreements, reported the number of hours Flexjet flew the Jet Engines to Duncan on a monthly basis, and Duncan invoiced Flexjet for the hours of use.

16.     Despite its continued possession and use, Flexjet has failed to make payments to Duncan as required by the Bailment Agreements, including but not limited to both operating charges and finance charges.

17.     Between March 30, 2021 and March 28, 2024, Duncan issued invoices to Flexjet (collectively, the "Invoices") for: (A) the amounts Flexjet owes Duncan for its possession and/or use of the Jet Engines pursuant to the Bailment Agreements in the aggregate amount of $16,743,141.01, and (B) related finance charges in the aggregate amount of $1,210,881.24, which continue to accrue.  The Bailment Agreements require Flexjet to make payment within thirty (30) days from the date of each invoice.

18.     A true and correct summary of Flexjet's unpaid Invoices as of April 1, 2024, is attached hereto as **Exhibit B** and is incorporated herein by this reference.

19.     Flexjet's financial obligations to Duncan under the Bailment Agreements are continuing and increase with the passage of time pursuant to the plain language of the Bailment Agreements.

20.     Flexjet did not and has not objected to the amounts it owes Duncan pursuant to the Bailment Agreements and as set forth on the Invoices, but has failed to make payment of the amounts it owes to Duncan.

21.     Flexjet has breached its obligation to pay the invoices within thirty (30) days as required by the Bailment Agreements.

5

## COUNT I
### (Breach of Contract)

22.     Duncan incorporates by reference all prior paragraphs in this Complaint as if fully set forth herein.

23.     Flexjet entered into the Bailment Agreements with Duncan and accepted all the terms and conditions set forth therein.

24.     Duncan provided Flexjet with the possession and/or use of the Jet Engines in accordance with the terms and conditions set forth in the Bailment Agreements.

25.     Duncan has performed all of the obligations it owes to Flexjet pursuant to the Bailment Agreements.

26.     Flexjet willfully and intentionally breached the Bailment Agreements' terms, without cause, by failing to make payments when due to Duncan.

27.     As a proximate result of Flexjet's breach of the Bailment Agreements, Duncan has been damaged in an amount not less than $17,954,022.28.

## COUNT II
### (Quantum Meruit)

28.     Duncan incorporates by reference all prior paragraphs in this Complaint as if fully set forth herein.

29.     In the alternative to its claim for breach of contract, Duncan alleges that Flexjet is liable under the doctrine of quantum meruit.

30.     Duncan provided valuable goods and/or services to Flexjet by allowing Flexjet to possess and use the Jet Engines.

31.     Flexjet requested that Duncan allow it to possess and use the Jet Engines, and accepted possession of the Jet Engines from Duncan.

32.     Flexjet was reasonably notified that Duncan expected to be paid for the possession and use of the Jet Engines.

33.     Flexjet is therefore obligated to pay Duncan for the reasonable value of the possession and use of the Jet Engines, in an amount not less than $17,954,022.28.

34.     Duncan is entitled to an award of pre-judgment interest at the statutory rate of 12.00% in accordance with NEB. REV. STAT. § 45-104 and as otherwise provided by law.

## COUNT III
### (Unjust Enrichment)

35.     Duncan incorporates by reference all prior paragraphs in this Complaint as if fully set forth herein.

36.     Duncan conferred a benefit on Flexjet by allowing Flexjet to possess and use the Jet Engines.

37.     Flexjet knew Duncan was conferring a benefit on it by allowing Flexjet to possess and use the Jet Engines.

38.     Flexjet accepted the benefit Duncan provided it, and it would be inequitable for Flexjet to retain the benefit without paying Duncan the reasonable value of its possession and use of the Jet Engines.

39.     Flexjet is therefore obligated to pay Duncan for the reasonable value of the possession and use of the Jet Engines, in an amount not less than $17,954,022.28.

7

40.    Duncan is entitled to an award of pre-judgment interest at the statutory rate of 12.00% in accordance with NEB. REV. STAT. § 45-104 and as otherwise provided by law.

## COUNT IV
### (Account Stated)

41.    Duncan incorporates by reference all prior paragraphs in this Complaint as if fully set forth herein.

42.    Flexjet promised to pay Duncan a stated sum of money as more fully set forth in the Invoices.

43.    The Invoices Duncan sent to Flexjet generated an account that Flexjet owed to Duncan (the "Account").

44.    Flexjet accepted Duncan's Invoices as correct, and they now constitute Flexjet's obligations on the Account.

45.    Flexjet promised to pay all sums due and owing on the Account to Duncan.

46.    The amount Flexjet owes Duncan on its Account is not less than $17,954,022.28, plus interest of 12.00% per year pursuant to NEB. REV. STAT. § 45-104.

## RELIEF REQUESTED

WHEREFORE, Duncan respectfully requests a judgment in its favor, and against Flexjet and that the Court award it:

a)    Damages, including unpaid bailment fees and finance charges, in an amount according to proof but no less than $17,954,022.28 for the unpaid fees Flexjet owes to Duncan pursuant to the Bailment Agreements;

b)    Pre-judgment and post-judgment interest;

8

c)      The costs of this action; and

d)      Other relief the Court considers appropriate.

## DEMAND FOR JURY TRIAL

The Plaintiff respectfully demands a trial by jury in Lincoln, Nebraska.

Dated this 18th day of April, 2024.


DUNCAN AVIATION, INC., Plaintiff,


By:   /s/Lindsay K. Lundholm

Lindsay K. Lundholm (NE# 22224)
Brandon R. Tomjack (NE# 22981)
Brian Barmettler (NE# 27017)
of    BAIRD HOLM LLP
1700 Farnam Street
Suite 1500
Omaha, NE  68102-2068
Phone: 402.344.0500
Fax: 402.344.0588
Email:  llundholm@bairdholm.com
Email:  btomjack@bairdholm.com
Email:  bbarmettler@bairdholm.com

9

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of April, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Jonathan Oblak
Daniel Sisgoreo
John B. Quinn
jonoblak@quinnemanuel.com
danielsisgoreo@quinnemanuel.com
johnquinn@quinnemanuel.com

Patrick E. Brookhouser, Jr.
Matthew G. Munro
pbrookhouser@mcgrathnorth.com
mmunro@mcgrathnorth.com

And I hereby do certify that I have emailed and mailed by United States Postal Service the document to the following non CM/ECF participants:

N/A

/s/Lindsay K. Lundholm