IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DUNCAN AVIATION, INC.,

                    Plaintiff,

vs.

FLEXJET, LLC,

                    Defendant.

4:24-CV-3004

MEMORANDUM AND ORDER

This is a breach-of-contract case involving unpaid bailment charges for aircraft equipment. The plaintiff, Duncan Aviation, Inc., alleges that the defendant, Flexjet, LLC, owes it several million dollars under a series of bailment agreements. Filing 22 at 6; *see* filing 22-1. This matter is before the Court on Flexjet's motion to dismiss or, in the alternative, to stay the action. Filing 24. The motion will be denied.

## I. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. While the Court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal*,

556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

## II. BACKGROUND

Flexjet is a fractional jet ownership company that owns a number of aircraft. Filing 22 at 2. Duncan is an aircraft maintenance and repair company based in Lincoln, Nebraska. Filing 22 at 1-2. Flexjet has delivered aircraft to Duncan for maintenance, and Duncan allows Flexjet to temporarily use jet engines owned by Duncan while repairs are being performed. Filing 22 at 2. Flexjet's use of Duncan's equipment is governed by a series of bailment agreements, all of which are substantively similar or identical. *See generally* filing 22-1.

Duncan filed this lawsuit because Flexjet has been using Duncan's equipment, but Duncan has not been paid. Filing 22 at 6-8. Flexjet moved to dismiss Duncan's claims against it, arguing the unambiguous terms of the bailment agreements indicate that a different company—Honeywell International, Inc.—is responsible for paying the bailment charges pursuant

to a Mechanical Services Agreement between Honeywell and Flexjet. Flexjet
sued Honeywell in a New York state court regarding the scope of that
agreement.

<em>Terms of the Bailment Agreements</em>

As relevant to Flexjet's motion, the bailment agreements provide:

- Flexjet is the customer. Filing 22-1 at 1.
- There is an "Associated Agreement," named the "MSA," which is the
  Mechanical Services Agreement between Flexjet and Honeywell. *Id.*;
  filing 22 at 4; *see also* filing 20-4.
- Under Block 16, the bailment rates include a $2,349.81 hourly operating
  charge and a minimum charge of $15,000. *E.g.*, filing 22-1 at 1.
- Pursuant to Block 19: "'Published rental rates stated in Blocks 16(a-d)
  apply for 'non-MSP covered events and/or MSP account is in PAR'
  Operator Continues to Pay MSP As Normal." *Id.* (quotations in
  original).[1]
- The bailment agreements, under Section 2.1 in the "Additional Terms
  and Conditions," state as follows:

  (A) Customer will pay the Operating Charges, Minimum
      Charge, Deposit, Advance Payment, and other
      charges/fees (as applicable) . . . provided on page one of
      this Agreement. . . .

  (B) If Duncan Aviation provides Equipment as a rental or
      bailment under a maintenance plan or agreement

---

[1] MSP, apparently, is an abbreviation for Honeywell's maintenance service plan, which
Duncan describes as a "quasi-insurance plan." *See* filing 30 at 22.

3

identified in sections nine through fifteen, and

i.   Customer's equipment covered under the maintenance plan or agreement ceases to be covered under that maintenance plan or agreement, or

ii.  Duncan Aviation determines after the execution of Duncan Aviation's standard bailment agreement, that repairs of Customer's equipment covered under the maintenance plan or agreement are in fact not covered by that maintenance plan or agreement,

then, Duncan Aviation may charge Customer Duncan Aviation's standard Equipment operating charges.

*E.g.,* filing 22-1 at 2.

## III. DISCUSSION

### 1. MOTION TO DISMISS

Flexjet argues the contract unambiguously states that Flexjet is not responsible for paying the bailment charges, and so Duncan has failed to state a claim for breach of contract as a matter of law. Flexjet's motion to dismiss is premised on its interpretation of the bailment agreements.

In interpreting a contract, the Court must first determine, as a matter of law, whether the language is ambiguous. *David Fiala, Ltd. v. Harrison*, 860 N.W.2d 391, 395-96 (Neb. 2015). A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Davenport Ltd. P'ship v. 75th & Dodge I, L.P.*, 780 N.W.2d 416, 422 (Neb. 2010). However, a contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id.* And if a court

4

determines that ambiguity exist, the interpretive meaning is a question of fact for the fact finder. *Id.* at 423.

According to Flexjet, its agreement with Honeywell is an "MSP," and under the unambiguous terms in Block 19, Flexjet only has an obligation to "Pay MSP As Normal." *See, e.g.*, filing 22-1 at 1. However, under Section 2.1 in the "Additional Terms and Conditions," Flexjet may be charged operating charges if the customer's equipment is not covered under a maintenance plan for some reason. *E.g.*, filing 22-1 at 2. The Court finds the language in Section 2.1 unambiguous, but the language in Block 19 is about as clear as mud. Under Section 2.1, if Flexjet's repairs are not covered by a maintenance service plan or agreement, then Flexjet is responsible for paying the bailment charges for using Duncan's equipment while the repairs are being performed.[2] Otherwise, the maintenance service plan covers Duncan's repairs and the use of Duncan's equipment. But Block 19 is quoting some unidentified other source and the grammar is difficult to parse, so it does not provide Flexjet with unambiguous protection from paying the bailment charges assessed while Flexjet used Duncan's equipment.

Flexjet argues that Duncan did not allege facts supporting an inference that Flexjet's services stopped being covered by a maintenance plan. Flexjet argues that Duncan's assertion that Honeywell "has discontinued payment for such services by Duncan to Flexjet" is a legal conclusion. The Court disagrees. Drawing inferences in favor of Duncan, the *fact* that Honeywell did not cover

---

[2] Duncan argues that the MSA is not an MSP, and the provision in Block 19 does not apply to Duncan's agreement with Flexjet. *See* filing 30 at 22-23. In the event that the MSA proves *not* to be an MSP—although it certainly walks and quacks like one at this point—then certainly the unambiguous terms of the contract would impose an obligation on Flexjet to pay for the services provided by Duncan. In either case, Duncan has sufficiently pled a breach of contract.

Flexjet's expenses pursuant to a maintenance plan or agreement indicates that the condition precedent under Section 2.1 was met, and Flexjet's obligation to pay the bailment charges was triggered. Filing 22 at 4, 6; Fed. R. Civ. P. 8(e).

Whether Honeywell stopped covering Flexjet's expenses and whether Flexjet's services were covered by a maintenance plan are factual questions, not legal ones. Flexjet appears to argue that Honeywell wrongfully refused to fulfill its obligations under the MSA, and Flexjet's obligation to pay Duncan never arose. But whether the condition precedent was met and actually triggered Flexjet's obligation to pay is a question that requires further factual development and cannot be decided on a motion to dismiss.

Drawing inferences in favor of the plaintiff, Duncan has stated a claim for a breach of contract. Duncan has also stated a claim for various forms of equitable relief. A plaintiff is able to prosecute multiple remedies, even to final adjudication, so long as the plaintiff receives but one satisfaction. *Penn. Nat. Mut. Cas. Ins. Co. v. City of Pine Bluff*, 354 F.3d 945, 951 (8th Cir. 2004). Duncan has alleged facts which support its various claims of equitable relief, and Flexjet's motion to dismiss will be denied.


## 2. ABSTENTION

Flexjet argues that whether its equipment is covered by a maintenance plan is subject to litigation currently pending in New York state court, and so this Court should abstain based on *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). *See, e.g., Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009). Federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, even in the face of a pending state court action involving the same subject matter. *Id.* (quoting *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 926 (8th Cir. 2006)). A federal court may divest itself of jurisdiction by abstaining only when

parallel state and federal actions exist and exceptional circumstances warrant abstention. *Id.* (citing *Colo. River*, 424 U.S. at 817-18).

To determine whether proceedings are parallel, a court must determine whether there is a substantial similarity between the state and federal proceedings, which occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court. *Id.* This analysis focuses on matters as they currently exist, not as they could or might be. *Id.* Jurisdiction must be exercised if there is any doubt as to the parallel nature of the state and federal proceedings. *Id.* (citing *AAR Int'l, Inc. v. Nimelias Enter. S.A.*, 250 F.3d 510, 520 (7th Cir. 2001)); *see also Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013).

This lawsuit can only be said to be parallel to the state lawsuit where there are "substantially similar parties" litigating "substantially similar issues." *Fru-Con*, 574 F.3d at 535. To determine whether parallel proceedings exist, courts compare the sources of law, required evidentiary showings, measures of damages, and treatment on appeal for each claim. *Cottrell*, 737 F.3d at 1245. Flexjet argues that Duncan is "substantially similar" to Honeywell, and that Duncan's interests in *this* lawsuit are harmonized with Honeywell's interest in the New York lawsuit.

The Court isn't convinced. Here, the bailment agreements are governed by Nebraska law, filing 22-1 at 5, while the agreement between Honeywell and is governed by the state of New York, filing 20-5 at 22. And the required evidentiary showings are different in the two cases: In its lawsuit against Honeywell, Flexjet has to show Honeywell breached *that* contract, while here, Duncan has to show that Flexjet breached *this* contract. Whether Honeywell breached its contract with Flexjet may be irrelevant to the legal issues presented in the federal suit. The same is even more true for the New York

7

case: whether Flexjet breached the contract with Duncan is irrelevant to whether Honeywell breached its contract with Flexjet. *See CRW Mech. Consulting and Fabrication, LLC v. Sandine*, No. 8:10-cv-407, 2022 WL 343616, at *3 (D. Neb. Feb. 4, 2022).

Flexjet argues that if Honeywell *wrongly* refused to pay Duncan's bailment charges under the MSA, then the condition precedent in Section 2.1 was not triggered. According to Flexjet, that legal question is pending before the New York state court. But according to the contract between Flexjet and Duncan, if "Duncan Aviation determines . . . that repairs of [Flexjet's] equipment are in fact not covered by [a] maintenance plan or agreement," then it is Flexjet's obligation to pay the bailment charges. Filing 22-1 at 2. Duncan's determination is independent and separate from Honeywell's obligations to Flexjet, and could reasonably be based on Honeywell's "discontinued payment" for services provided to Flexjet. *See* filing 22 at 4; filing 22-1 at 2. Honeywell's alleged wrongful conduct may be of no concern, and, if that's the case, Flexjet's defense to this lawsuit must be that *Duncan* acted wrongfully, which is not a question presented in the New York lawsuit.

The actions are not parallel. *Colorado River* abstention is not appropriate. For the sake of completeness, the Court has also considered the six non-exhaustive factors to determine whether exceptional circumstances warrant abstention, *Fru-Con*, 574 F.3d at 535, which only further demonstrate the differences between the state and federal lawsuits. Those factors are:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—

not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Id.*

In these circumstances, there is no res over which a court has established jurisdiction. Flexjet acknowledges that Nebraska and New York are equally convenient forums. Filing 28 at 29. There is no risk of piecemeal litigation, because, again, the claims are legally distinct—the New York lawsuit is about Honeywell's alleged wrongs, and this lawsuit is about *Duncan*'s determination that Flexjet's repairs were not covered by a maintenance plan or agreement. The New York case has certainly progressed further than this case, but again, the issues in that case are different than those presented here. And state law controls in both the federal and state courts—however, the bailment agreements at issue here are governed by Nebraska law, *see* filing 22-1 at 5, which a Nebraska federal court is better suited to adjudge than a New York state court. And the adequacy of the New York forum to protect Duncan's rights is a neutral factor.

All-in-all, this case does not present the extraordinary conditions required by *Colorado River* for this Court to disregard its obligation to exercise the jurisdiction it is given. *Fru-Con*, 574 F.3d at 540. If the New York court determines that Honeywell is responsible for the payments to Duncan, Flexjet can seek reimbursement for any judgment that might be entered against it in this lawsuit. Duncan has the right to pursue its claims against Flexjet in this court. Accordingly,

IT IS ORDERED:

1.    Flexjet's motion to dismiss or stay this action (filing 24) is
      denied.

2.    This matter is referred to the Magistrate Judge for case
      progression.

Dated this 29th day of August, 2024.

                              BY THE COURT:

                              John M. Gerrard
                              Senior United States District Judge